We have four cases on for hearing this morning. First up is 23-4532, United States v. Faulls. Ms. Trodden. Good morning, Your Honors, and may it please the Court. I'm Erin Trodden on behalf of Thomas Faulls. Mr. Faulls did not otherwise use a firearm within the meaning of the guidelines, and the District Court erred in determining that he did. When the District Court analyzed the use of a firearm guideline, it considered not Mr. Faulls' conduct as the guideline requires, but instead whether the firearm served a purpose to Mr. Faulls in the course of the offense. This is a standard that is supported neither by the text of the guidelines nor by the cases that have considered this. In an effort to salvage this enhancement, the government argues for a different standard that the District Court did not use and that also is not supported by the facts of this case. Considering, first, what actually occurred with a firearm in Mr. Faulls' case, a firearm shows up in two places. When Mr. Faulls kidnapped his wife, there was a shotgun on the back seat of the truck partly covered by a blanket, and he also told her that there was a gun. That gun never left the truck the entire course of the kidnapping. The only time that he ever touched it or picked it up was when he moved it further from himself. He wrapped it in a blanket and put it in the bed of a truck. The District Court explicitly found that he, well, the District Court agreed with defense counsel that he merely possessed that shotgun. That's at 721 of the joint appendix. Counsel said it was just possessed, and the court said, well, I know that. I know that it was just there. The other place that a gun shows up is that several weeks before that, Mr. Faulls, during a dispute with his wife, walked out of the family garage holding a .22, and she said, are you going to kill me? And he laughed and put the gun on his shoulder and took it back into the garage. The District Court, at sentencing, also found that he did not overtly threaten his wife with the gun and did not point it at her at any time during the kidnapping incident. So those are the facts. Counsel, do you agree? I'm just trying to make sure I understand everyone's positions, that if your client had pointed the gun at his wife, that that would be more than brandishing? Under these circumstances, it would be, yes. Are there circumstances where pointing a gun at someone would not be more than brandishing? I can imagine circumstances where there would be. I think there would be edge cases, but, for example, if someone were not intending to point a shotgun or a gun at someone. Intentionally pointing a gun. I think intentional pointing, I think that is where the line, that is a line that courts have drawn very clearly. If you look at the cases cited regarding otherwise use of a firearm, the vast majority of them are cases where a firearm is pointed at someone. Usually it's pointed at someone and then either a demand or a threat is made to them. But do you agree that that doesn't need to be present in this record for the enhancement to apply and for someone to otherwise use a weapon? I think that there would have to be some concrete conduct that amounts to more than brandishing. That's what the government, that's what the guidelines require. So to answer your question, I think I do agree that there are other things a defendant could do with a gun, but I think that they are all kind of equivalent to pointing. So if you look at what the guidelines require, first it's conduct. The defendant has to do something with the firearm. And is that conduct limited to the conduct immediately preceding what is the act that suffices as otherwise use, or is it the entire line of conduct that you just described earlier that is relevant? I think that the guidelines would probably answer that as relevant conduct, right? If we're looking at the relevant conduct of a case, then probably somewhere within the relevant conduct, if the defendant does something that amounts to otherwise use, that would be countable. But it does have to be some kind of concrete conduct. Can I ask you, you gave one example that I think came up before the district court, I think maybe, I can't remember who raised it, but a kidnapper opens his coat and shows a gun and tells the person, you know, come with me. Is that just brandishing or is that more than brandishing? I think that's just brandishing, Your Honor. Brandishing encompasses displaying a firearm for the purpose of intimidation. I think that is exactly what that is, is brandishing. If you do that, that's just brandishing, but if you point the gun, that's more than brandishing. Right, because the guidelines, and this is a curious guideline. What's the sort of relevant difference between displaying a gun and saying come with me and pointing a gun and saying come with me? I think the answer to that comes from both the text of the guideline and from the way courts have interpreted this. So the text of the guideline gives you this hierarchy of whatever this is, it has to exist in the interstice between less than discharge, but more than brandishing, displaying, or possessing. So that's sort of a, that brandishing, displaying, or possessing is sort of increasing or decreasing in aggravation, things you can do with a gun. And so we're looking at something that's more than brandishing, but less than discharge. I think the intermediate step is preparing to discharge. So if you either use a gun for violence, say you pistol whip someone with it, or if you are doing something that is taking it out of the realm of possibility and into the realm of immediacy, then you are in the realm of otherwise using. So for example, pointing a gun, racking a shotgun, cocking the hammer on a gun, I think all of those kind of fall within that spectrum. The LaFortune case maybe gives the closest of the way courts have looked at these, maybe kind of the best explanation for this. I think it's fair to say that courts have struggled to figure out how exactly to express this. But LaFortune, sort of paraphrasing, talks about how when you display a firearm, you are showing that you have the possibility to use it in a future time, that there is the possibility of violence at a future time. When you take the firearm out and point it, you are bringing that into, it's no longer future, it's immediate, I am about to discharge it. What if when you open your coat, the kidnapper opens his coat, he says, come with me or I will use this gun and kill you? I think courts have found that come with me or come with me and I will use this gun and kill you are basically the same thing when you are showing someone a gun. I think that's why courts have said... But that's not immediate. That's still not immediate enough until you have your hand on the gun. I think that's right. I think because this is about conduct with the firearm. That's what this guideline is about. And again, it's not about the case in general. To return this to Mr. Falls... Ms. Trogdon, I'm sorry to interrupt you, but I just want to be sure I understand your position. So the easy case is someone who points a gun at someone, right? And then you mentioned brandishing. But where does otherwise using fall in that continuum? Is that more than brandishing, less than brandishing? Otherwise using must be more than brandishing. Why do you say that? Because that's what the guideline says. So under 1B1.1 in the definitions, and to take us a step back, 2A4.1 says, apply this guideline when the defendant uses a firearm. And then the commentary to 2A4.1 says, using a firearm means either discharge or otherwise use under the definitions. And so you go to the definitions in 1B1.1, and the definitions say, otherwise use means conduct that does not amount to discharge but is more than brandishing, displaying, or possessing. And so we're in a world in which the defendant's conduct has to be more than brandishing in order for otherwise use to apply. And that's the situation why we are talking about that. And your position is that the conduct that preceded the weapon being in the truck and it literally not being directly pointed at the victim, that all of that, even if relevant, doesn't amount to otherwise using the weapon? That's correct, Your Honor. I think that what Mr. Falls' conduct with the .22 several weeks before was brandishing. He displayed the firearm to her in order to intimidate her. It's textbook brandishing. It's not more than brandishing. What's the relevance of their prior relationship? It seems to me that he would know, because of their relationship and because of what had happened in the past, that his statement to her, that there was a gun in the vehicle, and knowing her, it's an enclosed vehicle, they're traveling through space, she testified she felt that she couldn't run away because the gun was there. By the plain language of the guideline, it's very hard for me to wrap my head around if a dangerous weapon was used doesn't contemplate this exact circumstance. Your Honor, I think that's why you have to follow the chain of the guidelines to what dangerous weapon was used means within the context of this guideline. That's what takes us again to the more than brandishing but less than discharge. Again, this is a narrowly focused guideline. We are looking at what did the defendant do with the firearm, and was that thing that he did with the firearm more than simply brandishing it? To answer your question, the importance of their relationship probably matters in the context of the greater offense, but as to this particular guideline, as to what did Mr. Falls do with the firearm that amounted to more than brandishing, it doesn't because what we are focused on is not the impact on Lori or the purpose of the firearm and the greater offense, but what was the conduct with the firearm that amounted to more than brandishing. Except that it could be an implicit threat. You've already said that if it was an explicit threat, then that would be more than brandishing. If he pointed the weapon at her. Or said, I'm going to shoot you. I think if he said, I'm going to shoot you, and he pointed the weapon at her, that would certainly be more than brandishing. I don't know that simply saying, I'm going to shoot you, amounts to more than brandishing because he's not doing anything with the gun. If he calls her on the phone and says, I'm going to shoot you, he's not using the firearm. He's making an interstate threat. But if he says it's in the backseat of the car, and if you run away, I'm going to shoot you. Would that be more than brandishing? No. I think that that is the same thing because it is not that intermediate step before discharge. It may be helpful to think about the facts of this, too, in terms of the gun being in the backseat with a shotgun is very different from the situation under, for example, the Blankenship case that the government cited. I might add that I think if the court is going to look to the Fifth Circuit standard, it should look to the Fifth Circuit's published decision in Dunigan, which requires either pointing or targeting the firearm. Blankenship's an unpublished case that if it's applying that standard, it's at the very edge of that standard. But even in that case where the defendant is holding the gun on his lap and preventing the person from leaving the vehicle, it's a handgun. It's right there. He's got it in his hand. It's certainly more conduct with the gun than having a shotgun in the backseat. While Mr. Falls is driving, he can't very well reach around while driving, grab the shotgun. It's not totally clear to me that he could use the shotgun against the front seat passenger while driving. I think factually it's a different situation. There are times during the kidnapping where he's not driving, where they stop, they go into a Walmart. And the gun remains in the truck the whole time, Your Honor. But he could have grabbed it at that point because he wasn't driving. Right, but he didn't, so the gun was in the truck. And so, again, we're not talking about hypotheticals. What did the defendant do with the gun? If he had grabbed it, if he had pointed it at her, I think we would be in a different situation. But simply possessing the gun is not sufficient. If you think about brandishing, for example, the definition of brandishing requires that the firearm be actually present. That's part of the guidelines definition of brandishing. Do you think that the Seventh Circuit's decision in Kruger was correctly decided? Or do you think it's distinguishable on its facts from this case? I think it's distinguishable on its facts, Your Honor. And what are the facts that distinguish it? That he pointed the gun in Kruger. So when the farmer in Kruger, the- Well, if he pointed the gun, then why did the court say that he otherwise used it? Because otherwise use encompasses pointing. Pointing is otherwise use. Pointing exists in that intermediate space between brandishing and discharge. And so courts that have considered this generally find that when a defendant points the gun, that is otherwise use of the firearm. That is that intermediate step prior to discharge. In Kruger, he pointed the gun at the farmer's wife just as the farmer was arriving. And then he also pointed the gun at himself, which I think was a concern. Do you think that was dispositor? I think it was a factor that the court considered. It didn't mention it, though. It didn't say explicitly, as I recall, that the gun was pointed. They did say explicitly the gun was pointed. Do you think it did? Okay. It's certainly in the facts of that, and I believe I cited them in the briefing, in the reply brief, but that as the farmer was driving up, the defendant was pointing the gun at his wife. In addition, though, it's a little bit like blankenship in that he also has a handgun on his lap while he's driving. And having a handgun that you're holding while you're preventing someone from leaving the vehicle does seem significantly different to me than having a shotgun that's big and is in the back seat and you probably can't use while you're driving. All right. Thank you, Ms. Truong. Thank you, Your Honor. Mr. Juhan. May it please the Court. Keiko Juhan for the United States. If I may first address the hypothetical, Judge Berner, that you asked, and also Judge Harris, I think you got to a hypothetical that I'd like to talk, because I think this illustrates these hypotheticals, the principle here that is in play. And my friend on the other side talked today about, at first said that purpose doesn't matter, but later I think the definition of brandish does include purpose. It's to intimidate. And so I think the hypotheticals that have been discussed here today, they kind of triangulate that purpose beyond intimidation, the conduct, if the use of the gun is to go beyond intimidation but to specifically threaten or menace, as this Court said in McNeil, then that is more than brandishing. I honestly don't understand the difference between displaying or making known a gun to another person in order to intimidate versus doing the same thing in order to menace. How is that not basically the same thing? What makes it intimidating is the menace intrinsic in having a gun displayed. I think the way to answer that, Your Honor, is that menacing in specific threats would be intimidation, but intimidation is not menacing, and here's why. But again, it's not just any kind of intimidation. It's intimidating by displaying a gun to someone. I opened my coat so you can see the gun. You do not think that is menacing. I'm just intimidating them, and those are two different things. We think that is correct. So in your hypo of just generally displaying the gun or generally making it known. To intimidate, yes, to coerce the person, get in my car. To make it known is to have a generalized sense of fear of, oh, this person has a gun, I should be afraid. But that is different than a specific threat of harm to that person, which can be either expressed, which was your additional hypo of, I have the gun, and if you don't comply, I will use it against you. Or, as my friend on the other side has conceded in footnote 3 of her reply, that threat could be implied. And that's what we have here is that the race gesti, his statements to her, his death threats the night before at JA 2728, the come with me, do it the easy way or the hard way or the day of, the full context of this encounter, his conduct, the things he did, the things he said, the making known of the gun to her, yes, it is brandish, but it's brandish plus. It's making known the gun, not just to intimidate, but to specifically threaten this person who he has made death threats to before. I just, for the record, just in sort of normal, you know, speaking English, if someone opens their coat, gestures at a gun to me and says come with me, I'm feeling menaced. Like that's why it is an effective form of intimidation. So I'm really having trouble distinguishing menacing from intimidating when you are doing it by way of displaying a gun. Can you imagine, is there any, tell me the kind of kidnapping where someone displays a gun to intimidate the victim where you would not think, and it's one victim, one perpetrator with a gun, displaying the gun in order to intimidate, to coerce, but that was not menacing and there was no threat? I can think of an example, Your Honor, and I take this set of facts, but say it's a totally random kidnapping. And so there's no back story, there's no idea here that his purpose in his conduct is to specifically threaten her. Except for the part where he displays the gun. Correct. And so our position is that if he had just randomly gotten someone off the street and that person had gotten in the car and he says, you know, I have a gun, that that is brandish, that is making known to intimidate. But if then he says, and if you don't comply, I'm going to shoot you, that's the express threat that brings it into a specific threat. And here we think that that functionally is what's happened because we have just an implied threat based upon the race just died, based upon I have the zip ties, do this the easy way or the hard way, and their history. And so his conduct here is to specifically threaten her. I think that's, you know, I would say that I'm not sure my friend on the other side has really pointed to a case that says that the Third and the Fifth Circuits and the Seventh Circuit's formulation, as well as McNeil and this court, that menacing specifically threatened a personalized risk of harm. There's not a case saying that those cases are wrong that I found. Maybe I missed it. So we think that that's a proper understanding of this guideline, and I think Kruger recognizes, of course, that the guideline is somewhat confusing and cases have struggled with it. I would say in response to Judge Diaz, your question you ask about Kruger. So it is certainly true that in the recitation of the facts of Kruger that the defendant pointed the gun at the nonvictim. But as you, I think, were alluding to, in its analysis, what Kruger talked about wasn't the fact that, oh, this is otherwise using because he pointed it at the nonvictim. It was because this defendant's conduct evaluated in context. Of course it was directed not just to generally intimidate but to create a specific threat of harm, basically a comply or else I'll use the gun against you. And Kruger says that's enough. That's the specific threat test. I would say, of course. In this case, before the defendant moved the gun to the back of the truck, it was sitting where? In the armrest or where was it? I believe the testimony was in the back seat, and she said it was in full view pretty much when she got in. Is that relevant, that she saw it? Or does it matter if he said, I've got a gun? I think it would satisfy mere brandishing if he merely informed her of the presence of the gun with the purpose of intimidating and the gun was, in fact, present. And then what takes it beyond brandishing is that, again, looking at the totality of the circumstances, it's not a random kidnapping. It's, as Judge Berner was alluding to earlier, specifically targeting this individual and that his conduct on the whole is going to threaten that individual. Why does it matter if it's random or targeted? I'm totally not getting how the effect of displaying a gun to intimidate is different if it's random versus targeted. Because the reason I'm using the random hypothetical, Your Honor, is to kind of extract out some of the race gesti that we think is important here. And so I guess our point is that if, and maybe Your Honor just disagrees, and if so, that's fine, is that we think that there has to be some difference between just the gun is present and intimidation. And so that can be satisfied in one of two ways. It could be the gun is literally used to bludgeon a person or you can have a plus factor by the purpose of the use of the gun. Again, this is something more than intimidation can be a specific threat. I apologize. No, no, no. I totally understand your position. It's the difference between intimidating by displaying a gun is not necessarily threatening for a random victim. That would be your position. That's correct. And it can be. I'm not saying that it would never be, right? And so, again, it's a very factual dependent determination of we're looking at the defendant's conduct and is this conduct just a generalized intimidation. And maybe it's easy because this guideline comes up in bank robbery. It's the same basically guideline. So imagine a bank robber who randomly walks in up to the first teller and says, you know, I have a gun. Give me the money. We would say that's mere brandishing. But if that defendant either, A, says give me the money or I will shoot you, that is more than we think that that's a specific threat. Or if the defendant, much like this case, just broke up with that teller and they had had this relationship of death threats and he goes in and he specifically targets that teller, not the other three tellers that are there. We think that that is going beyond mere brandishing because he is specifically menacing that particular victim. And I guess, so the assumption is that it is, if it's an intimate partner with a history of abuse, it is the victim of the intimidation through display of a gun is more likely to think this person will kill me than a random person where someone they don't know pulls a gun at them? I think that's partially right but not quite right, Your Honor. It's not, we are not suggesting there should be like a subjective victim mens rea test here. The guideline, what the guideline cares about is the purpose, the defendant's purpose. And so is the brandishing the defendant to intimidate or is it to specifically threaten? And so it's the defendant's purpose. So that back story goes into what is his purpose in his conduct. Thank you. I'm happy to take other questions on the merits if the court has them. I would say just generally we think that the conduct here elucidates purpose. And as I've noted earlier, my friend today, I think in the briefing, has conceded that an express threat is not required and our position is essentially that the specific threat is the standard and that the totality of the facts here amount to essentially an implied threat. I would like to spend a moment on harmless error because I think that that is one way, as our discussion here and the other cases illustrate, this is a thorny guideline, and so one way the court could resolve this case is to simply go to assume harmless error. At JA 742 and 743, the district court says two things, and we think both of them are important for the harmless error analysis. The first thing it says is, I understand that I've applied this two-point enhancement, but I think that that guideline with the two points pushes this too high when I look at the total 3553A factors. So that's data point one. And then on the next page is data point two, where the district court says, look, looking at this holistically under the 3553A factors, I still believe that 295 is the appropriate sentence. But doesn't the district court always have to find that the sentence it is imposing is appropriate under the 3553A factors? If that's enough, then every time the district court does a proper sentencing, any guidelines would be harmless. Yeah, I totally agree with that, Your Honor, and I didn't mean to suggest that that would be enough. I guess that point is to illustrate that why the district court, the inquiry here is, what do we think the district court is going to do again if the guidelines were two points different? I do not believe that is the inquiry. We don't just try to guess. Like, I don't know. Will it make a difference if we send it back? Fair enough, Your Honor. I think the first prong, of course, is did the district court make clear either expressly or from the record, and sorry, I was using shorthand there, what its sentence would have been absent the two points. And so we know what its sentence was with the two points if you're looking just at JA 743. That's Your Honor's point, very valid point to me. But when you look at the page before, the district court says, look, I think the two points push this too high. And I think it's also a relevant contextual fact looking at, and we're not saying that this is binding or dispositive, but looking at the two judges who sentenced this defendant, they had different sentencing packages. There were different counts of conviction. We know from Dean v. United States in 2017 from the Supreme Court that when there's a 924C count that that can exercise hydraulic pressure on the non-924C counts for a downward variance. That's Judge Conrad's situation. Judge Jones, of course, didn't have the mandatory consecutive sentence, and he was able to look at the same conduct, different counts of conviction, different guidelines, and say I still think 295 is the appropriate sentence here. If the court has any further questions on either the merits, harmless error, standard of review, I'm happy to address them. Can you address the standard of review question? Yes, Your Honor. I actually would like to quote directly from the Gross opinion. And in the opening brief, the opening brief doesn't very clearly stake out what the specific standard of review should be in this case, but it does talk about the application of this case. It uses that word apply application. And Gross at page 722 says, and this is talking about a different guideline, of course, serious bodily injury, but it says, an application of the guideline that depends on an evaluation and weighing of the factual details, even though the details themselves may have been undisputed. And then it says clear error review applies. And so I think the opening brief talks about the facts are undisputed here, and this is about the application of the enhancement. So we think that this is clearly an intimately fact-bound application. The district court at 720 to 724, I think, four times quoted the correct operative guideline that we've all been debating. And so we think that clear error review should apply, but we don't think that we would win anyway, I guess. Can I just ask you a question about that? Yes. So the district court's reasoning was he used the gun because he used it to facilitate the crime by intimidating. And he says intimidating several times. I don't understand you to be arguing that the district court's legal analysis was correct. I mean, you're actually saying something quite different, that intimidation is different from menacing and threatening. Yeah, I think that that's a very fair question, Your Honor. Here's the two points that I would say to slightly rejoin to that. Understand that the district court said what it did. Of course, it said a lot. This is a very lengthy colloquy. One, the district court talked about coercion also. But specifically, I would cite to you. Oh, so I'm sorry. Do you think coercion is, if it's not menacing, is coercion enough to be more than brandishing or is it not enough? Because I would have thought intimidate and coerce are pretty comparable. Yeah, I think that coerce is kind of maybe in between intimidate. I feel like I'm arguing that Angel's not ahead of a pin here. But it's maybe between specific threat and intimidate. But the citation I was going to provide to Your Honor was at JA 730, the district court says, look, I think this is hard. The one case I found is this Eighth Circuit decision in Coyle. And he quotes from Coyle in that case talking about implied threats. And so I understand the district court certainly said what Your Honor said earlier. But also when you look to the case that he's looking to, I think he's trying to get in the ballpark of what we think the case law supports. Okay. If there's nothing further, we'd ask that you affirm. Thank you for your time. Thank you very much. Ms. Strachan. Thank you, Your Honor. A few points. The government referred to the cases cited in the standard that it's proffering about specifically threaten or menace. And I think it's worth looking at the facts of every one of those cases. So the government refers to this court's decision in McNeil about when use of a firearm goes beyond brandishing and becomes actually menacing. That was a case where the defendant pointed the gun at someone while telling them what to do. In Orr, which is the Third Circuit case, the court talked about whether conduct becomes sufficiently threatening that the weapon was otherwise used. And the court said, as to the question of otherwise used, our previous decisions suggest an answer. Pointing a weapon at a specific person or group of people in a manner that is explicitly threatening amounts to otherwise use. In Kruger, they talk about a personalized threat of harm and a specific threat of harm. And that is a closer case because, although my colleague is correct that they don't cite that in their reasoning, but they do talk about the broader context of the defendant threatening people, pointing the gun. And so I think in that case as well, the court needs to look at the fact that he was pointing the gun and using it, even if you, apart from the pointing, using it much more actively than Mr. Falls was using his gun here. Second, with respect to the government's position as to the standard and whether we should look at the closeness of the relationship between the victim's perspective as to menacing versus otherwise use or versus brandishing, I think this is an incredibly difficult standard for district courts to apply. I also struggle to find a situation in which if someone is, if a gun is involved and someone is shown a gun, the district court, given this piece of guidance is not going to be able to say, seems pretty menacing to me. And I think what the guideline is looking at is not this, but is looking at what the defendant's conduct was. That's why we have this very clear test in the guideline. The guideline is actually surprisingly specific. It's a little, it's hard to tell what they're talking about, but the outer parameters are quite clear that it has to be more than brandishing. And that brandishing is a defined term. So your friend on the other side says that we can avoid all of this by focusing on harmless error and not withstanding the fact that the district court didn't say explicitly that the sentence would have been the same, even absent the enhancement that the context of the extended discussion suggests the same. What do you think about that? This is not a harmless error, Your Honor. The harmless error is a high hill for the government to climb with, with respect to guidelines errors. Obviously courts have a duty to calculate the guidelines. As the Supreme Court recognized in Pew, the guidelines are the starting point of any sentence calculation. And in Martina's Molina, the Supreme Court recognized that even under a plain error standard, generally speaking, showing that there has been a guidelines error is going to be sufficient in most cases. Now the government, and that's where the burden is on the defendant to show the error. Now the government points to the Hargrove case, but what the district court said in Hargrove was much, much clearer than what the district court said here. Hargrove was a dog fighting case. And the district court in Hargrove, I think referred to the dog fighting guidelines as irrational and inexcusable. And said something like, I don't see how any Congress person, I don't see how any human being could apply these guidelines. The district court said nothing of the kind here. They did talk about a, why do you think that the district court would have had to use that same exact language? Didn't I don't think they would need to use that same exact language. What a recitation that the guideline, that the enhancement is just too high is why isn't that a rough equivalent of what you just described? Because I think that that is recognizing that the court wants to vary downward. A downward variance is still a downward variance from something. It's a downward variance from the guidelines. So the district court recognized. They said, I think leniency is appropriate here. Given Mr. Falls is mental health history. And so it recognized that it was still going to vary downward from the guidelines. So you're still starting with the guidelines. The district court never made any statement that suggested that even hinted that it would apply the same. The same sentence, regardless of this enhancement or regardless of the guidelines, it referred to the sentencing package doctrine, but it said the sentencing package allows it to consider the factors that it's required to consider among those factors is of course, the guidelines. So the government hasn't met its burden of showing harmless error here. And I see my time is up. Thank you, Miss. Thank you. I want to thank both counsel for their excellent arguments. This morning. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, Pamela A. Harris, Nicole G. Berner